IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. CR09-0060 |
| vs. | REPORT AND RECOMMENDATION |
| JIMMIE COUTENTOS, | |
| Defendant. | |

TABLE OF CONTENTS

*I.*   *INTRODUCTION.* . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*II.*  *PROCEDURAL HISTORY.* . . . . . . . . . . . . . . . . . . . . . . 2

*III.* *ISSUE PRESENTED.* . . . . . . . . . . . . . . . . . . . . . . . . 2

*IV.*  *RELEVANT FACTS.* . . . . . . . . . . . . . . . . . . . . . . . . 2

*V.*   *DISCUSSION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
       A.   *Was the Search Warrant Supported by Probable Cause?.* . . . . . . . . . 6
       B.   *Does the Leon Good Faith Exception Apply?.* . . . . . . . . . . . . . 9

*VI.*  *CONCLUSION.* . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*VII.* *RECOMMENDATION.* . . . . . . . . . . . . . . . . . . . . . . . 10

*I. INTRODUCTION*

On the 28th day of September 2009, this matter came on for hearing on the Motion to Suppress (docket number 20) filed by the Defendant on September 21, 2009. The Government was represented by Assistant United States Attorney Ian Thornhill.

Defendant Jimmie Coutentos appeared personally and was represented by his attorney, Mark C. Meyer.

## II. PROCEDURAL HISTORY

On August 20, 2009, Defendant was charged by Indictment (docket number 2) with two counts of production of child pornography, and one count of possession of child pornography. The Indictment also seeks the forfeiture of certain property, including Defendant's residence on 30th Street NE in Cedar Rapids, Iowa. Defendant appeared on August 24 and entered a plea of not guilty. An October 26, 2009 trial date was set.

On September 18, Defendant filed a motion to continue the trial, citing a conflict in counsel's schedule. The motion was denied by the Court on September 21. Later that day, however, Defendant filed a supplemental motion to continue the trial, citing the unavailability of an expert witness. Following hearing, the Court ordered that the trial be continued for one day. That is, trial is now scheduled to begin on October 27, 2009.

Also on September 21, Defendant filed a Motion to Dismiss (docket number 19), Motion to Suppress (docket number 20), and Motion *in Limine* (docket number 21). The motion to suppress was referred to the undersigned Magistrate Judge for a report and recommendation. The motion to dismiss and motion *in limine* are pending before the district court.

## III. ISSUE PRESENTED

In his instant motion to suppress, Defendant asks that the Court suppress evidence seized during the search of his home on July 7, 2009. Defendant argues that the search warrant was not supported by probable cause. The Government argues that probable cause existed for the issuance of a search warrant or, alternatively, that the good faith exception of *Leon* applies.

## IV. RELEVANT FACTS

On July 6, 2009, Investigator John O'Brien of the Cedar Rapids Police Department submitted an application for a search warrant (Government's Exhibit 1) to the undersigned

Magistrate Judge. The application sought authorization to search a single-family residence located on 30th Street NE in Cedar Rapids. The application asked that law enforcement authorities be permitted to take "pictures and videos" of two rooms within the house, seize "[a]ll video cameras, and video recording devices," and seize documents pertaining to occupancy or ownership of the premises and reflecting the family relationship between Defendant and the two alleged victims.

The application was supported by an affidavit signed by Investigator O'Brien. According to the Affidavit, law enforcement authorities were notified in February 2009 regarding allegations of criminal activity which occurred approximately seven years earlier. It was reported that Defendant videotaped two of Defendant's granddaughters engaged in sexually explicit conduct. As part of the investigation, the girls were interviewed at the St. Luke's Child Protection Center.[1]

Child #1 (now age 13) and Child #2 (now age 14) told authorities that when they were approximately 6 to 8 years old, Defendant "directed them to engage in, and then video taped them engaging in, sexually explicit conduct at his residence."[2] Child #1 and Child #2, who are cousins, were visiting their grandparents' home on 30th Street NE in Cedar Rapids, when Defendant took them into a spare bedroom, which is known to the family as "the blue room." According to the girls, their grandmother had gone to the store. The girls reported that Defendant "directed them to take off all their clothes."

Child #1 reported that after they were naked, Defendant placed whipped cream on each of the girls' bodies, including their chests and their vaginal area. According to Child #1, Defendant then instructed them to lick the whipped cream off of each other. Child #1 reported that Child #2 licked the whipped cream off of her "front" area, which

---

[1] The girls are identified by name in the affidavit, but for these purposes, the Court will refer to Child #1 and Child #2.

[2] Child #1 and Child #2 were interviewed separately on February 27, 2009 and March 3, 2009.

3

she also referred to as her "girl part" and "down there." According to Child #1, she refused to lick the whipped cream off of Child #2, telling Defendant that she did not like whipped cream.

Child #2 reported that after they were naked, Defendant put whipped cream on their stomachs. Child #2 said that Defendant then instructed them to lick the whipped cream off of each other. Child #2 reported that she licked the whipped cream off of Child #1's stomach.

Both girls told authorities that the activity was videotaped by Defendant. At the request of the interviewer, each girl separately drew a picture of the room, including the contents and the camera placement. According to Investigator O'Brien's affidavit, the drawings "were consistent with each other." Both Child #1 and Child #2 "place[d] the camera on a stand at the foot of the bed on the right side facing the headboard." According to the affidavit, "[i]n each drawing the girls identify themselves standing on the bed facing their grandfather who is placed standing at the foot of the bed."

Child #1 initially reported the incident to her older sister in February 2009. The older sister informed their mother, who then contacted law enforcement authorities. The older sister also told law enforcement that she had been sexually abused by Defendant when she was "roughly the same age" as Child #1. Specifically, Child #1's older sister reported that Defendant made her perform oral sex on him.

Child #1 and Child #2 both reported that Defendant made pornographic magazines available to them. Child #1 stated that Defendant had encouraged her to look at the magazines with him. The girls reported that the magazines were kept in Defendant's "workroom" located in the basement of his residence. Child #1's mother, who is Defendant's daughter, told authorities that "she knows from her childhood her father keeps pornographic magazines in his 'workroom.'"

Child #1 and Child #2 also reported that on another occasion at around this same time, Defendant "encouraged them to take off their swimsuit tops while watching them

swim in a pool in the yard" of his residence. According to the affidavit, "[w]hile topless, their grandfather told them to do a 'runway' and described that to be similar to walking like a model."

When Child #2's mother was interviewed by law enforcement authorities on June 17, 2009, she stated that Defendant "would constantly have a small hand held video camera in operation during family events." The video camera was described as "a small silver handheld type." When Child #2 joined the interview on June 17, she described the video camera used by Defendant to videotape the whipped cream incident as "a small handheld type with a flip out screen," which was silver in color.

Child #1's mother was also interviewed on June 17, 2009 and told law enforcement authorities that Defendant possesses "a handheld video camera and has had the same one for a long time." She told law enforcement that she "may have last seen her father with this video camera this last Christmas or during a birthday party for [Child #1's older sister] in January 2009." When Child #1 joined the interview, she described the video camera used by Defendant to record the whipped cream incident as "being a grey handheld type." Child #1's older sister was interviewed on June 17 and told law enforcement authorities that Defendant has a handheld video camera which she believed to be silver in color.

Based upon the allegations set forth in the affidavit, the Court concluded that there was probable cause to search Defendant's residence on 30th Street NE in Cedar Rapids. Specifically, the Court authorized law enforcement officers to search for all video cameras and video recording devices. The Court also authorized law enforcement to take pictures and videos of the "blue room" and "workroom" at Defendant's residence. Finally, the search warrant authorized law enforcement to seize documents pertaining to occupancy or ownership of the premises and the family relationship between Defendant and Child #1 and Child #2.

The search was executed on July 7, 2009 at 10:25 a.m. Authorities seized a Sony digital camera, two camera tripods, and an Alliant Energy bill.

## V. DISCUSSION

### A. Was the Search Warrant Supported by Probable Cause?

In his motion to suppress, Defendant asserts that "the application for warrant and attached affidavit fall far short of providing probable cause to search the residence."[3] Defendant did not cite any authority to support his argument, other than a general reference to the Fourth Amendment.

The Fourth Amendment to the United States Constitution protects persons and their houses against unreasonable searches and seizures. "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. CONST. amend IV. In making a probable cause determination, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Stated otherwise:

> If an affidavit in support of a Search Warrant "sets forth sufficient facts to lead a prudent person to believe that there is a 'fair probability that contraband or evidence of a crime will be found in a particular place,'" probable cause to issue the warrant has been established.

*United States v. Grant*, 490 F.3d 627, 631 (8th Cir. 2007) (quoting *United States v. Warford*, 439 F.3d 836, 841 (8th Cir. 2006)). The Court examines the sufficiency of a

---

[3] At the time of hearing, Defendant's counsel asserted, for the first time, that Investigator O'Brien's affidavit may not accurately represent the statements made by Child #1 and Child #2, thereby implicating *Franks v. Delaware*, 438 U.S. 154 (1978). As the Court indicated at the time of hearing, Defendant may not raise a *Franks* issue for the first time at the hearing. The Government had no prior notice that the issue may be asserted by Defendant, did not have an opportunity to brief the issue, and was not prepared to respond with appropriate testimony.

search warrant affidavit using a "common sense" and not a "hypertechnical" approach. *Id.* at 632 (citing *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005)).

Here, the affidavit of Investigator O'Brien asserted the following facts:

1. In February 2009, Child #1 told her older sister that approximately seven years earlier, Defendant videotaped her engaging in sexually explicit conduct.

2. Child #1's older sister informed their mother, who then contacted law enforcement authorities.

3. In late February or early March, Child #1 (who is now age 13) was interviewed at the St. Luke's Child Protection Center and reported an incident which occurred approximately seven years earlier with her cousin, Child #2 (now age 14).

4. Child #1 told authorities that when the girls were visiting their grandparents' home on 30th Street NE in Cedar Rapids, Defendant took them into a spare bedroom and directed them to take off all their clothes. Defendant then placed whipped cream on each of the girls' bodies, including their chests and vaginal area. Defendant then instructed them to lick the whipped cream off of each other. Child #1 refused, telling Defendant that she did not like whipped cream, but Child #2 complied.

5. Child #2 was interviewed separately at the St. Luke's Child Protection Center in late February or early March 2009. Child #2 confirmed the essential facts as described by Child #1. According to Child #2, however, the whipped cream was placed on their "stomachs."

6. Both girls told authorities that the activity was videotaped by Defendant.[4] The girls independently drew pictures of the room, including the camera placement. The drawings were consistent with each other.

7. Both girls also reported that on another occasion at around this same time, Defendant encouraged them to take their swimsuit tops off while swimming in a pool in his yard.

---

[4] In his brief, Defendant asserts that "[t]here is no allegation that Mr. Coutentos used the camera during the incident recited in the application for warrant." *See* Brief in Support of Motion to Suppress at 2 (docket number 20-2 at 2). That assertion is incorrect. The affidavit states that the girls disclosed that Defendant "videotaped them engaging in sexually explicit conduct."

7

8. Child #1's older sister told authorities that when she was roughly the same age as Child #1, Defendant made her perform oral sex on him.

9. Both Child #1 and Child #2 reported that Defendant made pornographic magazines available to them. Child #1's mother told authorities that she knew from her childhood that Defendant keeps pornographic magazines in his "workroom."

10. Child #1, Child #2, Child #1's older sister, Child #1's mother, and Child #2's mother all told authorities that Defendant has a handheld video camera. Child #1's mother reported that he "has had the same one for a long time." She also told authorities that she believed she had seen Defendant with the video camera in December 2008 or January 2009.

The allegations support a finding that it is probable Defendant videotaped two of his granddaughters engaged in sexually explicit conduct approximately seven years ago. When interviewed separately at the St. Luke's Child Protection Center, Child #1 and Child #2 gave consistent stories regarding the material aspects of the incident. Both girls provided drawings of the scene, identifying themselves, Defendant, and the placement of the camera. The drawings were consistent with each other. Child #1's older sister also reported that Defendant sexually abused her when she was roughly the same age as Child #1.

As set forth above, however, to justify the issuance of a search warrant, the affidavit must lead a prudent person to believe that there is a "fair probability" that evidence of a crime will be found at the residence. *Gates,* 462 U.S. at 238; *Grant,* 490 F.3d at 631. Here, the affidavit established that Defendant is an avid videographer, who, according to Child #2's mother, "would constantly have a small handheld video camera in operation during family events." Child #1's mother believed that she saw Defendant with a video camera as recently as January 2009, approximately six months prior to the application for search warrant. Common sense tells us that it is unlikely that Defendant would have disposed of the video camera between January and July 2009. The video camera is evidence of a crime. Accordingly, the affidavit established a "fair probability"

that evidence of a crime could be found at Defendant's residence.[5] Therefore, probable cause existed for the issuance of a search warrant.

## B. *Does the Leon Good Faith Exception Apply?*

The Government also argues that the good faith exception enunciated in *United States v. Leon*, 468 U.S. 897 (1984), is applicable in this matter. For the reasons set forth above, the Court believes that it is unnecessary for the district court to address the good faith exception, since there existed probable cause for the Search Warrant. Nonetheless, the Court will address the issue in case the district court disagrees with its analysis on probable cause.

The good faith exception provides that disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant. *Leon*, 468 U.S. at 922. The Government may not rely on the good faith exception, however, if one of four circumstances are present.

> The Supreme Court has identified four circumstances in which an officer's reliance on a search warrant would be objectively unreasonable: (1) when the affidavit or testimony in support of the warrant included a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the judge "wholly abandoned his judicial role" in issuing the warrant; (3) when the affidavit in support of the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and (4) when the warrant is "so facially deficient" that the executing officer could not reasonably presume the warrant to be valid.

---

[5] Defendant devotes much of his two-page brief to assertions in Investigator O'Brien's affidavit regarding the characteristics of persons who possess child pornography. The argument ignores the fact, however, that the warrant did not authorize a search for child pornography, and none was found. The assertions found in the affidavit in this regard were not germane to the application, and are not part of the Court's probable cause determination.

*Grant*, 490 F.3d at 632-633 (citing *Leon*, 468 U.S. at 923).

At the time of hearing, Defendant asserted that the third *Leon* exception applies, and argued that the application in support of the warrant in this case was so lacking in indicia of probable cause to search, that no reasonable officer would rely on the resulting warrant. The Court disagrees. For the reasons previously discussed, I believe the affidavit established probable cause to search the house for the listed items. At the least, however, there was sufficient information to support a good faith belief by the officers that the warrant was valid.

## VI. CONCLUSION

In the Motion to Suppress, Defendant argues that the Search Warrant issued on July 6, 2009, was not supported by probable cause. For the reasons set forth above, I disagree. Even if probable cause was lacking for the issuance of the Search Warrant, I believe the evidence seized is nonetheless admissible pursuant to the *Leon* good faith exception, as urged by the Government. Accordingly, Defendant's Motion to Suppress should be denied.

## VII. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the district court **DENY** the Motion to Suppress (docket number 20) filed by Defendant on September 21, 2009.

The parties are advised, pursuant to 18 U.S.C. § 636(b)(1)(B), that within ten (10) days after being served with a copy of these proposed findings and recommendations, any party may serve and file written objections with the district court.

DATED this 29th day of September, 2009.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA