**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. JIMMIE COUTENTOS, Defendant. | No. 09-CR-60-LRR<br>**ORDER** |

_____

*TABLE OF CONTENTS*

*I.*    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

*II.*   *PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*III.*  *RELEVANT FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . *3*
    *A.*   *Trial Testimony* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
        *1.*   *K.C.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
        *2.*   *S.Z.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
    *B.*   *Restitution Request* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*

*IV.*  *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
    *A.*   *The Status of ICVCF and Blue Cross* . . . . . . . . . . . . . . . . . . . . . *5*
        *1.*   *Relevant statutes* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
        *2.*   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*
            *a.*   *ICVCF* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*
            *b.*   *Blue Cross* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *9*
    *B.*   *Causation* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *10*

*V.*   *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *11*

### *I. INTRODUCTION*

The matter before the court is the sentencing of Jimmie Coutentos.

## II. PROCEDURAL BACKGROUND

On August 20, 2009, a grand jury returned a three-count Indictment (docket no. 2) against Defendant. Counts 1 and 2 charged Defendant with Production of Child Pornography, in violation of 18 U.S.C. § 2251(a) and (d).[1] Count 3 charged Defendant with Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). On December 3, 2009, the court entered an Order (docket no. 67) merging Counts 1 and 2 of the Indictment.[2]

From December 7, 2009 to December 10, 2009, the court held a jury trial. Attorney Mark Meyer represented Defendant. Assistant United States Attorney Timothy Duax represented the government. On December 10, 2009, the jury returned verdicts of guilty on Counts 1 and 2. With respect to Count 1, the jury returned a special interrogatory finding unanimously and beyond a reasonable doubt that Defendant used, persuaded, induced, coerced and enticed or attempted to use, persuade, induce, coerce and entice minors K.C. and S.Z. to commit the offense charged in Count 1.

On April 29, 2010, the United States Probation Office ("USPO") released a draft of Defendant's Presentence Investigation Report ("PSIR") (docket no. 137). Defendant lodged objections (docket no. 141) to the draft PSIR. On May 26, 2010, USPO released the final draft of the PSIR (docket no. 142). On June 24, 2010, the government filed its Sentencing Memorandum (docket no. 145). On that same date, Defendant filed his Sentencing Memorandum (docket no. 146).

---

[1] The government originally referred to 18 U.S.C. § 2251(a) and (e) in the Indictment. On October 6, 2009, the court entered an Order (docket no. 40) granting the government's "Unresisted Motion for Correction of Indictment Citation Error" (docket no. 39). The amended citation is 18 U.S.C. § 2251(a) and (d).

[2] For the remainder of the instant Order, the court shall refer to "Count 3" of the Indictment as "Count 2" pursuant to the Order merging Counts 1 and 2.

On July 8, 2010, the court commenced Defendant's sentencing hearing. Assistant United States Attorney Timothy Duax represented the government. Attorney Raphael Scheetz represented Defendant, who was personally present. The court sentenced Defendant to 120 months imprisonment. The court reserved ruling on restitution. On August 26, 2010, the court held a restitution hearing ("Hearing"). At the Hearing, the court ordered the parties to brief their positions regarding restitution and continued the Hearing. Defendant agreed he did not need to be present when the court issued its written order. On September 7, 2010, Defendant filed his brief ("Defendant's Brief") (docket no. 161). On September 10, 2010, the government filed its brief ("Government's Brief") (docket no. 164).

### III. RELEVANT FACTUAL BACKGROUND

#### A. Trial Testimony

Among other evidence, the following testimony was presented at trial:

*1.     K.C.*

K.C. is fourteen years old. She was born on May 23, 1995. She is Defendant's granddaughter. Her father is Defendant's son, Gary Coutentos. K.C. testified that, when she was "about six or seven," her grandfather engaged in inappropriate sexual conduct with her and her cousin, S.Z. Trial Transcript ("Tr. Trans.") Vol. I (docket no. 98), at 40. These actions took place in a room in Defendant's home known as "the blue room." *Id.* at 42. According to her testimony, K.C.'s and S.Z's grandmother left the home before this incident occurred. While their grandmother was away, Defendant asked K.C. and S.Z. if they "wanted to keep a secret." *Id.* at 44. The girls responded that they did, and Defendant led them into the blue room and "asked them to take off [their] clothes." *Id.* K.C. described the actions that Defendant directed them to take, including "wrestl[ing] each other" and "look[ing] at each other." *Id.* According to K.C.'s testimony, after Defendant asked that the girls wrestle and face each other, he went to his bedroom and

3

returned to the blue room with a video camera. K.C. testified that he pointed the camera at her and S.Z. for "around twenty minutes or so." *Id.* at 46. She testified that she believed the camera was powered on. After pointing the camera at the girls for some amount of time, K.C. testified that Defendant left the room a second time. He went to the kitchen and returned with whipped cream in a spray can. Defendant sprayed the whipped cream "on [the girls'] stomachs" and requested that the girls "lick it off" each other. *Id.* at 47.

K.C. testified that this incident ended when her grandmother returned home. At that point, Defendant put the camera away and told the girls not to tell anyone about what had happened. The girls then rinsed the whipped cream off in the bathroom and re-dressed.

### 2. S.Z.

At the time of trial, S.Z. was thirteen years old. She was born on January 26, 1996. She is Defendant's granddaughter. Her mother is Defendant's daughter, Lynda Ziadeh. K.C. is her cousin. S.Z. testified that, when she was "around the age of six," Defendant engaged in inappropriate sexual conduct with her and her cousin, K.C. *Id.* at 86. She testified that, while in the blue room with Defendant and K.C., Defendant asked her to take her clothes off. According to S.Z.'s testimony, Defendant directed S.Z. and K.C. to "get onto the bed." *Id.* at 87. The girls then "wait[ed] there." *Id.* S.Z. testified that Defendant then went into the kitchen and retrieved a "can of whipped cream." *Id.* S.Z. testified that Defendant then put the whipped cream on her breasts and pubic area. He then asked the girls to "lick it off each other." *Id.* at 88. S.Z. remembers that Defendant had the camera when he walked into the blue room.

### B. Restitution Request

The government requests that the court order Defendant to pay a total of $738.00 in restitution, including $531.80 to the Iowa Crime Victims Compensation Fund

("ICVCF") and $206.20 to Blue Cross/Blue Shield ("Blue Cross"). At the Hearing, the court received documents from ICVCF, which indicated that it paid $31.80 for one of K.C.'s counseling sessions (Blue Cross paid the remaining cost of the counseling, $206.20), $300.00 for a colposcopy procedure and $200.00 for a sexual abuse exam. Gov. Exs. 5 & 6 (docket nos. 160-3 and 160-4). K.C. attended the counseling session on March 26, 2009. The colposcopy and sexual abuse exam were performed on March 13, 2009.

## IV. ANALYSIS

Defendant objects to the government's restitution request on three grounds. First, he argues that ICVCF and Blue Cross are not "victims" according to the relevant statutes. Second, he claims that even if Blue Cross and ICVCF are victims within the meaning of the statute, the government has failed to prove that the Defendant's conduct caused the loss. Last, Defendant asserts that the government failed to meet its burden specifically with respect to Blue Cross by failing to provide adequate foundation for its exhibits. The court addresses these issues, in turn.

### A. *The Status of ICVCF and Blue Cross*

#### *1.   Relevant statutes*

In this case, any award of restitution is governed by 18 U.S.C. § 2259, which provides for mandatory restitution for Chapter 110 offenses. Counts 1 and 2 of the Indictment are Chapter 110 offenses. *See* 18 U.S.C. § 2251(a); 18 U.S.C. § 2252A(a)(5)(B). Section 2259, in relevant part, states: "[t]he order of restitution under this section shall direct the defendant to pay the victim . . . the full amount of the victim's losses as determined by the court[.]" 18 U.S.C. § 2259(b)(1). The "'full amount of the victim's losses' includes any costs incurred by the victim for" any "losses suffered by the victim as a proximate result of the offense." 18 U.S.C. § 2259(b)(3). A victim is:

> the individual harmed as a result of a commission of a crime under this chapter, including, in the case of a victim who is under 18 years of age, incompetent, incapacitated, or

> deceased, the legal guardian of the victim or representative of the victim's estate, another family member, or any other person appointed as suitable by the court, but in no event shall the defendant be named as such representative or guardian.

18 U.S.C. § 2259(c).

Orders of restitution under § 2259 shall be "issued and enforced in accordance with [18 U.S.C. §] 3664[.]" 18 U.S.C. § 2259(b)(2). Section 3664 outlines the general rules for enforcing a restitution order, including the following provision related to insurance or third-party compensation:

> If a victim has received compensation from insurance or any other source with respect to a loss, the court shall order that restitution be paid to the person who provided or is obligated to provide the compensation, but the restitution order shall provide that all restitution of victims required by the order be paid to the victims before any restitution is paid to such a provider of compensation.

18 U.S.C. § 3664(j)(1).

### 2. *Analysis*

Defendant claims that ICVCF and Blue Cross are not victims within the meaning of the relevant statutes. The court considers each entity, in turn.

#### a. *ICVCF*

The court finds that ICVCF is not a victim for purposes of § 2259. First, the plain language of the statute indicates that ICVCF is not a victim. Congress's use of the words "the victim" as opposed to "any victim" tends to support Defendant's argument. *Cf. United States v. Dayea*, 73 F.3d 229, 231 (9th Cir. 1995) (analyzing 18 U.S.C. § 3663(b)(2), which provides that a court may order restitution in the case of an offense resulting in bodily injury to "a victim" and holding that congress's decision not to use the phrase "any victim" means that the person actually physically harmed is the sole victim of the offense for restitution purposes). Additionally, § 2259's definition of victim

6

strongly suggests that congress had individual human victims in mind, as opposed to entities. Although corporations can be "individuals" in the legal sense, the definition, read as a whole, plainly refers to individual human victims. The statute mentions the age of the victims and refers to their guardians and descendants—terms clearly used in reference to human victims.

Second, the court finds *United States v. Follet*, 269 F.3d 996 (9th Cir. 2001), persuasive on this issue. *Follett* dealt with 18 U.S.C. § 2248, "which provides for mandatory restitution for crimes within the chapter containing the 'sexual abuse of a minor' provision, 18 U.S.C. § 2243[.]" 269 F.3d at 999. Sections 2248 and 2259 contain identical definitions of "victim." In *Follet*, the victim of sexual abuse sought counseling at a government-funded crisis center. *Id.* at 998. The Ninth Circuit Court of Appeals determined that the crisis center was not a victim within the meaning of the statute:

> That the Crisis Center was not the "victim" of Follet's crime, however, seems obvious. The crime was sexual abuse of a minor, a crime that may—indeed, usually will—result in psychological harm to the girl abused. That the girl will seek and obtain counseling for that harm is not, though, assured by the fact that the crime was committed (although we may hope that she does), and that she will seek such counseling, if she does, from a free clinic rather than one for which she pays, while perhaps predictable if one knows her economic circumstances, is certainly not something one can foresee from the fact that the crime was committed. So the connection between the commission of statutory rape and the economic cost to the Crisis Center for the services provided to Follet's niece is simply too attenuated to bring the Crisis Center within the statutory definition of "victim." We conclude that the crisis center was not the victim of Follet's crime, even though it ended up bearing some of the economic loss Follet caused.

*Id.* at 999.

Notwithstanding the court's previous analysis of ICVCF's status as a "victim," the court must continue the restitution inquiry by looking to § 3664(j)(1). In *Follet*, The Ninth

Circuit Court of Appeals also held that the crisis center was not entitled to restitution under § 3664(j)(1). Although the Ninth Circuit Court of Appeals opined that it made "practical sense" to treat the crisis center like an insurance company for restitution purposes, it reasoned that congress made a distinction between economic costs incurred directly by the victim and those incurred by a third party which renders services to the victim.[3] *Id*. at 999-1000. The court agrees with the Ninth Circuit Court of Appeals's analysis. The plain language of the statutes at issue in this case, §§ 3664(j)(1) and 2259, makes a distinction between situations where a victim suffers a loss and is later reimbursed and situations where the third-party provides the services without ever requiring the victim to pay or incur any loss. Section 2259 requires that the costs be "incurred by the victim." 18 U.S.C. § 2259(b)(3). Here the victim "incurred" a loss of $31.80, the cost of the insurance co-pay for her counseling session.[4] *See* Govt. Ex. 5 (docket no. 160-3) (showing that the victim wrote a $31.80 check for counseling services). The victim did not "incur" the $500.00 cost of the medical procedures, that is $300.00 for a colposcopy procedure and $200.00 for a sexual abuse exam. The ICVCF representative, Melissa Miller, testified at the Hearing that the treatment provider, St. Luke's Hospital, sent bills for those procedures directly to ICVCF. The victim did, however, incur the $31.80 cost of the co-pay for her counseling session before ICVCF reimbursed her.

The government argues that "[i]t makes no sense for a defendant to be liable for restitution when a victim pays first, then is reimbursed, but not liable when a source pays for services directly." Govt. Brief at 10. While this may be a sound policy argument,

---

[3] In *Follett*, the victim received free counseling from the tribal crisis center. The victim did not pay for the counseling first and later receive reimbursement. 269 F.3d at 998.

[4] The victim's mother paid the $31.80 bill. This does not affect the restitution analysis. *See* 18 U.S.C. § 2259(c) (stating that "the legal guardian of the victim" is considered a victim under the statute).

"good policy reasons are not enough to carry the day." *Dayea*, 73 F.3d at 232. "The 'language of the statute itself' controls." *Id.* (quoting *Hughey v. United States*, 496 U.S. 411, 421-22 (1990)). The language of § 2259 controls here, and that section requires that the victim "*incur*" a loss before any other statute, such as § 3664, is implicated. "'[T]he third-party restitution provisions of § 3664 . . . cannot trump' the substantive restitution provisions found elsewhere in the statutes, because § 3664 is only a procedural mechanism." *United States v. Cliatt*, 338 F.3d 1089, 1093 (9th Cir. 2003) (quoting *Follet*, 269 F.3d at 1000).

Finally, the government cites 18 U.S.C. § 2259(b)(4)(B)(ii), which provides that "[a] court may not decline to issue an order [of restitution] because of the fact that a victim has, or is entitled to receive, compensation for his or her injuries from the proceeds of insurance or any other source." This provision does not require that the court award restitution to ICVCF. It does not change the fact that restitution must be ordered payable to *a victim*. For all the above reasons, the court declines to order restitution in the amount of $500.00 to ICVCF. ICVCF is eligible to receive restitution in the amount of $31.80, provided there is a causal connection between the loss and Defendant's conduct.

    b.  *Blue Cross*

Blue Cross can recover restitution under § 3664(j)(1), which provides that the court may order restitution to an insurance company that has reimbursed a victim's offense-related losses. However, as with ICVCF, in order to receive restitution, the victim must have first suffered a loss, which Blue Cross reimbursed. There is no evidence in the record indicating that the victim first paid the $206.20, and was later reimbursed by Blue

Cross.[5] Accordingly, the court shall not award restitution to Blue Cross.[6]

## B. Causation

As the foregoing explains, ICVCF is statutorily eligible to recover the $31.80 that it paid to the victim, provided a causal connection exists between the counseling and Defendant's conduct. The government bears the burden to prove causation by a preponderance of the evidence. Although § 2259 does not contain an express causation requirement, "[c]ourts across the country have followed and applied the proximate-cause requirement in imposing restitution under Section 2259." *In re Amy*, 591 F.3d 792, 794 (5th Cir. 2009) (collecting cases). As the Ninth Circuit Court of Appeals explained:

> Section 2259 . . . incorporates a requirement of proximate causation: It states that the defendant shall pay "restitution for any offense" to the "victim" of the offense. It defines a "victim" as "the individual harmed *as a result of* a commission of a crime under this chapter, 18 U.S.C. § 2259(c) (emphasis added), and states that restitution shall compensate for "the full amount of the victim's losses," *id.* § 2259(b)(1), which includes medical costs, lost income, and "any other losses suffered by the victim *as a proximate result of* the offense[.]" *Id.* § 2259(b)(3)(F) (emphasis added).

---

[5] The court acknowledges that, in most instances, an insurer will pay for the victim's medical expenses prior to the victim incurring any substantial up-front costs. However, this fact, coupled with the court's reading of §§ 2259 and 3664(j)(1), does not render § 3664(j)(1) meaningless. Other restitution statutes do not expressly require that the losses be "incurred by the victim." *See* 18 U.S.C. § 3663A; 18 U.S.C. § 3663. In such circumstances, an order of restitution to an insurer (or other third party) may be appropriate even where the victim does not personally incur any costs. *See Cliatt*, 338 F.3d at 1092 (noting that other restitution statutes, which do not include "incurred by the victim" language, are "more expansive in their award of restitution" and may therefore "'allow restitution to reflect the value of services provided, no matter who is obligated to pay for them'") (quoting *Follet*, 269 F.3d at 1001).

[6] Because the court declines to award restitution to Blue Cross, it need not address Defendant's foundational arguments regarding the exhibits admitted at the Hearing.

> Section 2259 therefore requires a causal connection between
> the offense of conviction and the victim's harm.

*United States v. Laney*, 189 F.3d 954, 965 (9th Cir. 1999). This court previously imposed a proximate cause requirement for restitution awards under § 2259. *See United States v. Raplinger*, No. 05-CR-49-LRR, 2007 WL 3285802, at *6 (N.D. Iowa Oct. 9, 2007) (Reade, C.J.) (declining to order restitution under § 2259 because the court was "unable to find by a preponderance of the evidence that [the victim's] hospitalization and counseling expenses were a proximate result of [the defendant's] offenses").

"The main inquiry for causation in restitution cases [is] whether there was an intervening cause, and, if so, whether this intervening cause was directly related to the offense conduct." *United States v. Hackett*, 311 F.3d 989, 992 (9th Cir. 2002) (quoting *United States v. Meksian*, 170 F.3d 1260, 1263 (9th Cir. 1999)). "The causal chain may not extend so far, in terms of the facts or the time span, as to become unreasonable." *Id.* at 993 (quoting *United States v. Gamma Tech Indus., Inc.*, 265 F.3d 917, 928 (9th Cir. 2001)).

The court finds that there is a causal connection between the counseling session, which cost the victim $31.80, and Defendant's offense conduct. Although there is a period of several years between the offense conduct and the counseling, there is no evidence that an intervening cause, and not Defendant's conduct, was the basis for the counseling session. Furthermore, the victims of Defendant's crime did not disclose the crime until several years after Defendant committed it. Soon after making her disclosure, K.C. sought counseling. Accordingly, the court shall award restitution in the amount of $31.80 to ICVCF.

## V. CONCLUSION

For the foregoing reasons, the court shall order restitution in the amount of $31.80 to the Iowa Crime Victim's Compensation Fund. The court shall not order any other

restitution. The United States Probation Office is **ORDERED** to prepare an amended judgment in conformance with the instant Order.

**IT IS SO ORDERED.**

**DATED** this 1st day of October, 2010.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA